May it please the Court, my name is Sarah Cox. I'm here on behalf of Hunter Dent, Haley Dent, and the minor child, LD, in this appeal. Hunter is a 24-year-old, I'm sorry, 25-year-old former Army Cavalry Scout who is now a truck driver. Haley is a 24-year-old cosmetologist, and the minor child, LD, is a 10-year-old boy. The government seized my client's savings accounts pursuant to a writ of execution on November 29, 2018. Even though the Federal Debt Collection Procedure Act under which these writs were issued requires notice to be given to be served on any person whom the government, after diligent inquiry, has determined has an interest in the accounts, and even though my client's Social Security numbers were on those accounts, and Hunter and Haley were both over the age of 21, none of them were given notice that these specific accounts would be levied by the government. The way that the government reached these accounts... Let me ask you about the accounts so we understand. These are accounts that were created under this Uniform Gift to Minors Act? Yes, yes. So we have the initial question of the donative intent in terms of creating those accounts, but then Mr. Dent apparently did some things with the account or failed to take some actions that are required by that act when the children become majority age. And so that sort of creates an issue here of when you don't do something to the account, and of course there was some moving around of money too. I mean, if it was just money that you had in a minor's account, and I think that was the youngest one, that account is not at issue here, is that right? The minor's LD's account was ordered to be released from the court registry, but that has not happened yet. But my question is, it's not at issue here? No, no. The donative intent... And it sort of makes sense because that is under the Uniform Gift to Minors Act, is the donative intent, I guess it's presumptive, and it's just there. I mean, it doesn't sound like there's any basis. But the problem with the two older children's accounts, at least one of them, actually the money was taken out and put in the other account, is that right? Yes, sir. And so you've got this control over this account that seems to be, well, you know, yeah, it's yours, but when it gets to a certain age, you're not under this act anymore in terms of the gift. So if you take it out and use it, then it seems like I'm not sure there's a donative intent that's been established. So isn't that kind of the issue here as to the donative intent in terms of establishing those two accounts, given the disposition of what's going on with them? Yes, sir. So when we look at donative intent, we look at the moment that the corpus of those accounts was placed in the children's names, which happened in February 2011, when the children were still all minors. So Hunter was 16, Haley was 14, and LD was under a year old. So the donative intent is established at that time. And at that point, under the Gifts to Minors Act, when the money is put or when any property is given, title to that money, legal title and equitable title, is indefeasibly vested in the child. Legal title is indefeasibly vested and title is irrevocable under that act at the moment of the gift, which is part of the purpose of the UGMA to allow parents and other adults to give gifts to children. Who has equitable title? The children also have equitable title because the corpus of those accounts, while they are minors, the corpus of those accounts can only be expended for their benefit. And there is case law in bankruptcy court. It seems that this is the only time it really comes up. But there is case law in some bankruptcy court decisions that says that legal and equitable title is held in the same. And any time those two legal fictions exist in the same person, those fictions merge and full ownership of the account is in that person. So let me understand. Your simple argument, your argument, not simple argument, but the argument simply explained, I didn't mean it that way, is that once you create a gift that's given under Uniform Act, the donative intent is established there. It is no longer any question of who this belongs to. And that's the end of the case. I wish it was, sir. But I think. No, but I mean, that's that's I mean, if that's all it is, it's their money. It's their money. It's the children's money legally and equitably under your theory. And therefore, anything that a trustee or those who's the guiding of this money would do to it has no effect. So one cannot put money into this account and then be required by law to transfer it out at a certain age, but fail to do so. Because once you take it out, once you hit that legal age, you're out of the Uniform Minus Act protections. And and so then they can just take it and just use it. Under the UGMA, the terms of the UGMA accounts here, the children, we're going to refer to them as children, even though both of them are 100 years old. I understand that. That's a good way to refer to them. The children, once they reach the age of 21, have full authority to remove that money if they would like. It's their account. So they could sue, they could sue Mr. Dent for their money. If he had taken it out of their accounts, they could. They don't have to. If the money was in their accounts, they could, under the terms of the accounts, go into the bank and remove the money themselves. It's under their Social Security numbers, their birthdays. Wells Fargo's policies say that the children have full access to that money once they turn 21. Why didn't they? At 21, why don't you just go get your own money? Well, I think that there is no evidence in the record as to their intent for why they didn't do that. But in this case, it was reasonable to assume that by the time, for example, Haley turned 21, she was 22 and a half when the government took the money out of her savings account. Hunter, I believe, was deployed at the age of 21. So his reason, it's speculative, but his reason for leaving the money in could have been that he is deployed. But again, there was no reason for them to remove the money until the government took it out of their accounts. Go ahead. I was just going to ask if we have jurisdiction here. Yes. Well, what's the final order that you're appealing? The final order that we are appealing is a bit of a procedural item, but the district court issued an order after requesting motions for summary judgment on the question of if Dent had substantial non-exempt interest. And the district court ordered that Dent had a substantial non-exempt interest account. Yes. And so we are appealing that order. Well, there are a whole bunch of claims in this case, and the district court issued a, what do you call it, 54B ruling in order to get us the issues in the prior appeal. It didn't issue any 54B ruling here, and we still have all the common law claims in the case. So I don't understand how we have a final judgment. I'll be happy to explain that. Sure. Absolutely. If the government had given the Dent children the required statutory notice that their accounts were going to be levied, which it did not do, the government would have, under the Federal Debt Collection Procedures Act, I'm sorry, the Federal Debt Collection Procedures Act, the government would have given notice to serve notice on the children. The children would have had an opportunity to file a motion to quash the writ of execution as to their property. And then if that was denied, if that motion to quash was denied, the government, then the Dent children have standing to appeal to the, it's an appealable, a final appealable decision. So in this case, the fact that it was summary judgment is sort of, it's a procedural oddity because we were never given the chance to move to quash the writ of execution before it was issued. But don't you, I'm not, if the system doesn't go to the merits, it goes to the question of whether we have a final order in front of us over which we have jurisdiction. Yes. So in effect, this is a denial, even though it is on paper, a motion for summary judgment, in effect, this is a denial of the Dent children's motion to motion to quash the writ of execution, which is a final appealable judgment. The only reason it isn't is because of the procedural oddities that were created by the government. Okay. You understand this is a big sprawling case. God knows you understand that, right? And the district court ruled on those statutory claims that we talked about in the prior argument. You heard that, right? Yes. There are a whole bunch of common law claims that the district court never ruled on. They're the meat of this case. From those claims, your claims were up. Okay. The district court granted a 54B motion for us to consider all the things that we considered in the first year. It didn't grant a 54B motion with respect to anything else, including what you were trying to raise in front of us. Under the law, I do not believe that the district court needed to grant a 54B motion. Okay. I understand your argument now. Yes. We somehow get a final judgment because of what? Because, in effect, this is a denial of a motion to quash a writ of execution. Okay. We're not given the opportunity to actually file a motion to quash a writ of execution, but procedurally, as soon as the dead children found out that their accounts had been levied, we objected, and that objection was taken by the district court in essence as a motion to quash a writ of execution. It is not. Ms. Cox, what effect does the fact that you filed a motion to reconsider the district court's ruling, it was dismissed without prejudice, does that affect our jurisdiction and finality? I do not think so. I do not believe that it does. The district court held firmly that there's a substantial non-exempt interest, and the fact that we had filed the appeal out of an abundance of caution to preserve the deadline, and we had filed a motion for an expedited hearing on that matter, but it was never heard by Judge Gergel by the time we had to file our appeal. Well, on that purported motion to quash, which apparently ended up like a summary judgment motion, is the standard review of use of discretion? On a motion to quash? Yes. No. Because it's on the merits, it's de novo. But even if it was abuse of discretion, the court in this case absolutely did abuse of discretion when it came to the fact. The district court discounted the fact that this entire affidavit in support of his donated intent, it discounted the other evidence that was presented in favor of the government's evidence, which was simply that the accounts existed, Dent's name was still significant on some of those accounts, even though under the South Carolina statute, which determines property rights in this case, these children indefensibly have this month. So let me ask you about this. This is a summary judgment situation, and I'm wondering if there's not at least an issue of fact, and maybe that's where you're going. You would like it to be resolved in your favor. But these accounts that you indicate as though per se the donative intent is established once you set the account. The problem is, is under the South Carolina Uniform Gift of Manners Act, Mr. Dent is actually the custodial manager of the account, which means that when the children reach the age of 21, he then turns the money over. If he does not turn the money over, then it sort of indicates, well, you never intended to give it to him in the first instance. And that's the problem, the conundrum, at least in the evidence that's presented on the other side. There is evidence, it appears to me, as though he did have the donative intent, but I'm not sure it rises to a level of saying it's undisputed. Because you do have this instance, and even from your perspective, it's not undisputed, because he does take the money out of Mr. Dent's account, and he does put it in another account. He takes it out. Dent can't take it out, obviously, because if he could, when he reached 21, when Mr. Dent thought it was irresponsible, he says, no, you can forget it. I'm 21. I can get my own money. It doesn't work that way. He's the custodial manager of the account, and then he has a duty to do something with the money once you hit a certain age. He didn't do it. He didn't do it either one. Of course, his reason is, I've got litigation going on. And because I've got litigation going on, I don't want it to look like I'm doing something fraudulent. So how does that square with this? At the best case, I'm looking at, from your perspective, there may be an issue of fact here. I don't know what's going on, an issue of fact, but I don't see how that becomes undisputedly in your favor. Yes, sir. So I'm over time, but I'd like to answer. You can answer the question. Yes. Thank you. The money that was taken out of Hunter's account and put into Haley's account was during the time that Dent was legally still the custodian of the property. The property is the issue here, not the account itself. Depositing the property in a UGMA account establishes that donative intent, and there's a presumption of donative intent. When he moved that money, he had every intention of moving it back at the time, or at 21, that Hunter would have access to the money. That's the issue. He never did. He never did move it back. He didn't give either one of them money. At that time, he had been sued. Dent had been sued for $50 billion in federal court. That was around 2015 or so. I'm talking about when they actually did reach 21. He didn't give it to them. Right. Yes, sir. In August 2015 was when the complaint was filed and unsealed against Mr. Dent, and Hunter did not turn 21 until December of that year. So he was, at that point, and as Mr. Dent testified in his affidavit, he was concerned that moving that money would risk the government seizing the money from his children. And that is established in Dent's affidavit. And there's no other evidence that that would have been the case. Now, again, he didn't move the money back at that point, but that does not mean that it's Dent's money. All right. I got you. Thank you. Thank you. Thank you very much. From the government? Yeah. Your Honors, and may it please the Court, Jack Starcher on behalf of the United States. Appellants asked this court to review a decision of the district court that by its own terms only sets the terms of a supersedious bond and clarifies the terms of a supersedious bond pending appeal. As this court noted, there is still work to be done in this case, and therefore, this is not a final judgment that this court has jurisdiction over. In fact, in an earlier appeal in this very litigation, that's the Lutz, United States v. Lutz appeal, this court looked at similar sorts of, in that case, it was pre-judgment attachments. Here, we have a supersedious bond securing an appeal. But in that case, this court looked at… So we are here on summary judgment, and the question is, when we review this, I take it we review it in a light most favorable to the children. And while there does appear to be evidence he didn't give the money back, that there was a lack of this donative intent that might be inferred back to 2011, there is evidence he has a sworn affidavit. And his sworn affidavit says he never used any of the money for his personal use, and he did not consider it to be his money. He was willing to take whatever steps it was to transfer it to them. Why doesn't that create an issue of fact? So I guess two layers to that answer. I guess first turning to the standard of review. While the district court did frame its decision as a summary judgment decision, and while he asked for a summary judgment type briefing, if you look at what the district court did here, under either the government's view or appellant's view, this was either a motion setting terms of a supersedious bond, that's the United States' view, or as appellants contest, this is effectively a denial of a motion to quash a writ of execution. But under either of those views, this court has case law indicating that those decisions, those kinds of decisions, are discretionary ones, committed to the discretion of the district court, and are reviewed for abuse of discretion. Mr. Starcher, it's true that the Lutz case was prejudgment. Now it's post-judgment. Does that have any effect on the finality issue? The reasoning of the Lutz case, I guess, to focus on that, that the argument in Lutz was that those, while not final judgments, were still appealable as interlocutory appeals under the collateral order doctrine. That's not an argument that's right here. There isn't an argument that this is appealable as a collateral order. But the reasoning of Lutz was not specific to the timing with respect to that issue. This court in Lutz said that the reason why the collateral order doctrine was not available was because the issues raised in the Lutz appeal, similar to the issues raised here, were not significantly important, which is one of the requirements of the collateral order doctrine, and important in the sense that the issues being raised in Lutz, just as here, only relate to individuals' property interests and specific accounts. So in that sense, even though you're correct that the Lutz was prejudgment attachments, the reasoning of Lutz also disposes of any suggestion here that a collateral order doctrine would be available. But to return to Judge Winn's question, assuming that you were to reach the merits and to find that you had jurisdiction, again, this court has held, and an unpublished decision was the only case that I'm aware of here, but in United States v. LaRocque, that 724 Federal Appendix 268, this court held that a motion to quash is subject only to a decision denying a motion to quash is subject only to an abusive discretion standard, and that's citing a published decision, United States v. Under Seal. So I think even though this was framed as a summary judgment-type briefing, I think what the district court was getting at here was it was trying to decide whether or not it could resolve these questions on the papers and whether or not it needed to conduct an evidentiary hearing. So your view is, even though the government moved for summary judgment, that this is not relief that was granted based upon summary judgment to you? To be clear about this, the district court asked the parties to file summary judgment-type briefing on this question, and so the United States filed what it was asked to file and asked for summary judgment citing the summary judgment standard. Why would it do that? Why would it do that if you say summary judgment is not an issue in this case? Why do you need summary judgment? I don't think we do need summary judgment. I think that was the standard invoked. And to give an example here that I think clarifies this point, suppose that the district court was making a finding of fact and it said, I have to find a certain fact by clearing convincing evidence, and it says that that standard is met. And then the case comes up on appeal and it turns out the district court was wrong. It only had to find that fact by preponderance. This court wouldn't send the decision back to the district court because it had applied a higher evidentiary standard than it needed to. And I think that's what happened here. The district court held itself to a summary judgment-type standard and found that standard met. But this court's case law is clear that these sorts of decisions about motion squash and supersedious bonds are the sorts of decisions that are entrusted to a district court's discretion. And so despite the framing of the briefing and the decision, the United States' position is that the appropriate way to view this – Well, if it used a summary judgment standard, what was that? Isn't that a light most favorable to the non-moving party? And there's no disputed evidence? So to turn and squarely address your honors, assuming that summary judgment is the appropriate standard here. I'm only going upon the motion as at least what was there. This is what the trial judge did. I mean, you said use a summary judgment standard. That's all I'm saying. It's not an assumption. So, you know, I don't understand that. If it's done using the summary judgment standard, that's pretty set forth, pretty much standard. So if that is used, then the question is, why is that not a disputed fact in this matter at least? Because of his affidavit. So appellant's position that the district court somehow disregarded the affidavit, and you can look at that affidavit yourself, it's in the record, is undercut by the district court's own decision. The district court clearly did look at this affidavit. It is true that in the course of the affidavit, Mr. Dent says that when he opened the accounts for Hunter and Haley, his two children, his elder children, he said the purpose of these deposits was to help my children pay for educational and other expenses when they became adults. And then at other points in that affidavit, he says, I view this money as their money. But that affidavit also, very importantly, as you noted, as was noted in earlier questioning, that affidavit also admits repeatedly to engaging in conduct that is fundamentally inconsistent with that kind of donative intent. And the case law that appellants cite, this is the difference. So you've got some evidence that goes one way and some evidence that goes the other way. An affidavit in a light most favorable points in a particular direction that seems to favor him. I would disagree. I think this court has made clear that when you're even under a summary judgment standard, certain things are not enough to create a material dispute of fact. And among those things, self-serving statements of a party, also contradictory statements. And I think if you look at the affidavit in its entirety here, Mr. Dent, you know, said these things about what his intent was, sort of in a conclusory fashion. He said, I intended this money to be my children's. But then he later on in that same affidavit repeatedly said things that are inconsistent with that intent. Again, appellants suggest that. Which is what? I mean, I'm saying in a light, when you look at it, he says, I never used any money for my personal use. He didn't consider the money to be his. And he said he was willing to take steps to give it back. So to be clear, there's no requirement. So, you know, the whole question here is whether or not there was donative intent over these funds. Well, let me ask you that in that regard, talking about Dent's substantial non-exempt interest, the court applied the control test in the first instance rather than making a finding of infeasible gift under South Carolina law. Was that an error? No, Your Honor. You used the control test? You used the control test? I'm not sure whether or not. The way that the district court approached this was reasonable, which was that it first asked the question whether or not the United States had made a showing that Dent had a substantial interest in these monies. And the United States had made that showing based on all of the evidence of control that it had put forward. And then at that point, appellants said it was their burden at that point to show that despite that, the money was not, in fact, Mr. Dent's and that the children, in fact, had ownership over this money. And when it came to that, again, the evidence before the district court on this issue was undisputed that Mr. Dent had engaged in extensive conduct that was fundamentally inconsistent with the idea that he viewed this money as a completed, perfected gift to his children. And, again, this debate. I mean, but what's the whole purpose of the South Carolina Uniform and Gift of Minors Act? If he makes a valid gift to them, if he gives them this money, then how does he have a substantial interest in the bank accounts? So the key word there, Your Honor, is valid gift. And so the case law is clear that under the UGMA, it's not enough to merely invoke the statute. Invoking the statute creates a presumption of donative intent but not an irrebuttable one. And as questions sort of in the first half indicated, you know. Weren't these accounts initially set up in compliance with the Uniform Gift Act of South Carolina? And weren't they maintained? He was set up as a custodial manager of it. And from your perspective, that even those accounts, and it's kind of interesting to understand that, what you are saying is that a custodial manager, at the end of the, when the person becomes 21, there are reasons why you have this Uniform Gift Act, you know, tax reasons and other reasons. And I'm trying to understand how it is that you can convert that money back to yourself when they get 21, when it's been set up as a valid gift at that point. So again, the key there is valid gift. And that was the question before the district court, and it's a question presented here on appeal. The question, you know, there's no dispute that in order to invoke the protections of the UGMA, an individual has to give a gift. And part of giving a gift is that at the moment they give over that money, there has to have been donative intent. In other words, intent to surrender dominion and control over the gift and to indefeasibly and finally give it to the giftee. And so that's the question, whether or not this was ever, in fact, a valid UGMA account. And it has the name on it. You know, it was created under the title of the UGMA. But in order to have a perfected- It sounds like to me that if a child has one of these, is a beneficiary of one of these gifts, that you can go for 10, 12 years, and when you hit 21, you have no rights. Is that right? In other words, you have no rights. You just have, because the custodial manager just took your money and ran away with it. Is that the case? If a court finds that the custodial manager never intended to- No, I'm just asking you straight up. You don't need a court to find that out. I mean, if based upon what you're saying is that as a custodial manager, you're not obligated to comply with anything you've already set up on this thing for all these years, that when they hit 21, you can just take the money and use it for yourself if you want to. I see. I see. I mean, yes, that is the implication of the other side's view of this. The implication of the other side's view of this- No, no, that sounds to be your view. That's your view, that you can take the money and do anything else. Under South Carolina law, these children have no rights to this money. Because he can take it and do what he wants to do with it. Under South Carolina law, if there was no donative intent at the time the gift was created, then yes. The case law is clear that part of a valid gift requires donative intent, and courts have recognized that one of the ways- And would there be evidence of a donative intent if you set up the account, you maintain it for years, and you comply with all of the requirements for setting it up up until 21, and all of a sudden you take the money? I mean, I don't understand that. Respectfully, that wasn't the evidence before. But that would be exactly the case that can happen under your scenario, because it doesn't matter. Because there's nothing that indicates he's used it inconsistently, because he's got his affidavit. He says, I never used it for my personal use. I used it to pay off college loans that I reimbursed myself with. I maintained this account up to this point. And then they hit 21, and I took the money and ran off with it. So again, I feel like I've broken the record here a little bit, but if you say that you're opening an account under the UGMA, but when you open that account you in fact have no donative intent, then yes, that money was never actually gifted to your kids or to whoever else you wanted to give it to. And the district court had before it ample evidence indicating that, in fact, it's circumstantial evidence, but courts have recognized that the treatment of that money during the life of the account is circumstantial evidence of the donative intent that the donor had at time zero, when the money was put in there in the first place. And again, I think it bears emphasizing here that Mr. Dent, in his affidavit to the court, made clear and repeatedly acknowledged and admitted that he had done things with this money during the life of the account fundamentally inconsistent with the idea that he viewed this money as his children. So he said, I never viewed it as my own, and yet he admitted that a year and change, I think this was in 2013, after creating his son's account, he emptied that account out and moved all of the money in his son's account, into an account that he'd opened for his daughter. So who has the burden of proof here when there's an allegation that the debtor lacks a substantial interest when you have information that accounts were set up in compliance with South Carolina's Uniform Gift Act, maintained over a course of years, and then the children then come up and say, this is our money that he has, or whatever. Who has the burden here when that argument is made that he doesn't have a substantial asset in our money? When an asset is subject to a writ of execution or a supersedious bond, or is otherwise implicated in judgment enforcement proceedings, and these accounts were subject to a writ of execution, when an asset is subject to a writ of execution and a third party wants to come in and demonstrate that the asset should never have been so treated because it was in fact owned by someone else, the individual coming into court and trying to remove that asset is the party that bears the burden of showing that they have ownership and that therefore that asset should be removed from the writ or the supersedious bond or what have you. Well, that kind of puts the cart before the wagon, because the question is, if you went and got a third party's money, you could go and get anybody's money without this and just say, okay, this is an asset that you're going to require them to say he doesn't have a substantial interest in it. Why wouldn't the government take on the proof that sounds like it's reasonable? Okay, you seized the asset. Now show that he has a substantial interest in that account. Just to be clear, the United States has not executed, the money is not with the United States. I'm only trying to be clear on the burden of proof here. I know we can play it. I'm not trying to get around the words. I'm trying to get to the issue that I want to hear the answer to, and that is who has the burden of proof when a third party says that a judgment debtor lacks a substantial interest in this property? Why isn't it reasonable that that comes up and says, oh, no, he has a substantial interest, I'm going to get it. The government then says, I'm going to show you he's had an interest in that property. Or is the burden of proof only, I guess, from the third party perspective? You said they have to then show that he doesn't have it. That sounds to be flipping things around to me. So the initial burden is on the United States to show that there's a substantial non-exempt interest in the money. That's what allows it to be subjected. So the burden is on the government to show that the judgment debtor has a substantial interest in this property. A substantial non-exemptive interest. Yes, that's the. Yes, it is not on the third party to show that otherwise. It's not on the third party to come in and show that he doesn't have it. It's on the government to show that he does have it. Once the United States has made it showing that there's evidence to support a finding that there's a substantial non-exempt interest, and here that evidence was substantial, Mr. Dent, sole signatory in the account. I got how you characterize the evidence. I'm just trying to understand the burden of proof side of it. That's right. As long as the focus is first on the government, someone says, no, you took my property. You then said, no, it's not your property because he has a substantial interest. Then the government has to prove he has a substantial interest in the property. So at that point in time, once you do it, you got some defense would be, no, he doesn't. I got that. And just to highlight that, you know, these same interests, individuals coming into court and saying this was, in fact, my property. You can't include it in this litigation. These were the exact issues that were raised in Lutz. There, too, this case that came up to this court several years ago. There, too, it was third parties coming in saying that they had certain interests and certain assets that had been subjected to prejudgment attachments. And there, this court had no trouble finding that there was no jurisdiction even to hear that appeal. And, you know, the same outcome should be reached here. As Judge Motz, you know, highlighted earlier, the only reason why the main liability judgment was properly before this court on appeal was because the district court had issued a 54B ruling certifying that. There are still claims of the United States that have yet to be litigated. This money is currently being held in a supersedious bond in the court's registry account. And so there are multiple inflection points moving forward at which things can change in this case and at which appellants could at a later time assert these same sorts of issues, these same sorts of concerns. They could actually move to quash a writ of execution at some point in the future. And so this is not a final judgment. Along that point, can I ask you, when I asked your colleague on the other side about this, she said that this was, in effect, the denial of a writ of execution. Would that be a final order? It can be under certain circumstances. I guess two layers. I know I'm over time, but I'll answer this question, obviously. I have two more, too. Okay. So I'll start here and then keep going. So the case that appellants cite, this Parker case out of the circuit for the proposition that motions to quash writs of execution can be final orders, that case makes clear that in all events when asking whether something is final, a motion to quash or otherwise, the key question is whether or not there's anything left for the district court to do in respect to the matter. And so here you need to look no further than the district court's order to see that there is still, there are still things for the district court to do with respect to this money. If you look at J1344 to 1345, the district court made clear that the issue before it was whether or not these bank accounts are assets subject to a supersedious bond, not finally resolving the question of ownership. The order. Okay. I'm sorry. You are over time and it's been a long day. So let me ask you my two other questions, which are both fact questions. I don't think nobody won't be long. The Dent children represent that the government still has not returned the funds to LD. Is that correct? The LD account funds are in the district court's registry. So the United States doesn't have those funds. And in the United States, that's Mr. Dent presumably can go to the court and get those funds released from the district court's registry. But the United States has no role to play in that anymore. The money isn't with the United States. It's in the district court's registry. And the Dent children also, this goes to the facts, which we were talking about with my colleague, but the Dent children also dispute whether Dent was made aware, ever made the children aware of the custodial account. So notice was provided to Mr. Dent and under anyone's view of this, these accounts, you know, the names of the accounts were Mr. Dent as custodian of the children. And so making the custodian of these accounts aware that they were going to be subjected or could be subjected to these judgments, you know, in the United States view was sufficient to also give notice to the, you know, to the individuals who the custodian was managing these accounts for or claimed to be managing these accounts for. Okay. Thank you. Do my colleagues have any further questions? No. No. Thank you. Mr. Rebondal? Thank you. One point that I want to discuss is the idea of control. So it is true that there is a control standard that is utilized here, but it is not just what a debtor controls that is here. It is property that the debtor has a substantial non-exempt interest in. If the debtor controls property that doesn't belong to him, it is simply not subject to a writ of execution. The substantial non-exempt interest is a lot more of the burden that the government has. They did not just have to prove that Dent controlled this money. In addition, I want to point out that the names of these accounts actually have the children's names first, not Mr. Dent's. It says Haley, Shannon Dent, Floyd Dent, custodian. And the government was well aware of the ages of these children as shown in the evidence. They were well aware they had been conducting discovery on Mr. Dent for over four years in his financial condition. They had absolutely every reason to know that both of these Hunter and Haley were over the age of 21. The South Carolina UGMA is clear that custodianship does not extend past that point. They had every reason to know that these two individuals who are not their father should be notified. And the government has the responsibility to give notice to every person that it has reason to believe has an interest in those accounts. And why they did not give notice to my clients is beyond me. The fact that they gave notice to Mr. Dent, in addition, doesn't say that these specific accounts are going to be levied. It said the writ of execution was extremely broad. It did not list these accounts on the writ of execution. There was no way for him to know that these accounts would be seized, especially since under the UGMA, he had these funds belong to his children. Now, the district court did disregard Mr. Dent's affidavit as self-serving, which is what the government had argued. But I want to be clear, too, that the self-serving affidavit idea is only for self-serving opinions. Opinions that are self-serving cannot be credited to a litigant. But in this case, this was not a self-serving affidavit. This was an affidavit that was serving his children, which means it's, A, not self-serving, and that he only testified in that affidavit to one instance that was an opinion, and that was his opinion at 18 that his son was not quite ready to have the responsibility for this money. And that opinion is something that he is in his duties as a custodian is required to make. Under the UGMA, that is his job to determine at the age of 18 if his children or the other minors, if it wasn't his children, are responsible enough for these funds. That is why the UGMA allows the custodian the discretion to determine at 18 or 21. Now, Mr. Starcher keeps mentioning the idea that Mr. Dent repeatedly violated the UGMA, but I do not see that reflected in the record. When Mr. Dent took the money out of Hunter's account, he put it in a comparable account that he could easily put it back. He kept the account open, and he deposited additional funds. There is no evidence in the record that would indicate that he thought that that money could be Haley's. And even if he did, the fact that he thought, if he had thought that the money was Haley's, that he could give it from Hunter to Haley, that doesn't necessarily mean that Dent used it for his own purposes. There is no evidence in the record whatsoever that Dent ever took a penny of that money for himself. And the treatment of money by a custodian after donated intent has been established that Mr. Starcher was referring to, the case law that says that donated intent can be defeated by later acts, all of those cases that we read and we briefed said that that custodian had to treat that money as if it was his. So, for example, somebody putting money into an account, a UGMA account, and then immediately taking it out and giving himself a business loan or buying a truck or something else like that. So the treatment of the money has to be for the custodian to defeat the gift. There's no evidence that there was nothing but donated intent in 2011 when these gifts were created. And Mr. Dent's affidavit is an affidavit filled with factual assertions backed up by evidence, which has been uncontroverted in the record. If we do determine that the burden of proof in this case is that the government has to prove that Dent has a substantial non-exempt interest in property, the government simply has not met that burden of proof. What is our standard of review? It is, as we've discussed, a kind of a complicated thing because we briefed the issue to summary judgment. We probably need to uncomplicate it since we've got to figure out what it is. Yes, sir. Well, what do you say it is? This was cross motions for summary judgment. And with cross motions for summary judgment, this is a de novo standard. The district court decided as a matter of law that there was no genuine issue of material fact. We say that there's no genuine issue of material fact that these funds are our clients. The government says the opposite. So it should be a de novo review. Well, that's a really, really simplistic answer that I don't think really deals with Judge Wynn's question. You started out recognizing that there are all kinds of arguments that this really wasn't summary judgment. But you decided you would just go ahead and say that because it looks like summary judgment, I'll go with that. Believe me, Judge Wynn knows the standard for granting summary judgment. So that's all you need to say with respect to that. But really what we wanted you to explain to us is why it's that that we should look at rather than some other standard. I think in this case, because there was an opportunity after the district court had said that if the summary judgment did not clear up the issue, there could be an evidentiary hearing. I do believe in this case, the summary judgment standard is correct because there was never a full factual weight. You know, there was never a full evidentiary hearing. There was never a full measuring of the facts which could show in which abuse of discretion could be applied to, which is why I say standard summary judgment. But even if it was abuse of discretion, the district court would have abused discretion as to the weight of the facts. And I see my time is almost up. Are there any more questions? I don't think so. Thanks very much. Thank you. Appreciate your argument. Thank you. And we will adjourn court for the day. Thank you. This report stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Diana Gribbon Motz, James A. Wynn Jr., Henry F. Floyd